[No. 1964.]

## Jim Smith *v.* The State.

1. THEFT—INDICTMENT—CONSENT.—The indictment charges the appellant with the theft of five head of cattle, the property of E. M. T., and of eight head of cattle, the property of W. A. T., and avers the non-consent of the owners as follows: "Without the consent of the said owners." *Held*, that a joint possession and ownership not being charged, the allegation of ownership is sufficient.

2. SAME—EVIDENCE—CONSPIRACY.—It is immaterial at what time one charged as a member of a conspiracy to commit crime is shown to have entered the conspiracy. Every one who enters into a common purpose or design is deemed a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of the common design. If, therefore, an accused be shown to have entered into a conspiracy to commit crime, at any time before the consummation of the crime, each and every act and declaration made in furtherance of the common design is competent evidence against him. See the opinion *in extenso* for evidence *held* admissible under the rule.

3. SAME.—Note also that the same evidence is *held* admissible even in the absence of a conspiracy, as tending to inculpate the accused with the fraudulent intent with which another party to the theft procured the actual taking of the alleged stolen property. See the opinion *in extenso* on the whole question.

4. SAME.—In the case of Jones *v.* The State, 14 Texas Court of Appeals, 85, a rule of evidence is correctly stated as follows: "When necessary to establish identity in developing the *res gestæ*, or in making out the guilt of the accused by circumstances connected with the alleged theft, or to explain the intent with which the accused acted with respect to the property for the theft of which he was being tried. it was competent for the State to prove that other property was stolen at or about the same time and in the same neighborhood from which the property in question was stolen, and that this other property was found in possession of the defendant

when arrested for the theft of the property for which he was on trial.'
See the original opinion for evidence *held* not to come within the purview
of the rule, and for that reason to have been erroneously admitted.   But
see the subsequent opinion of Willson, Judge, sustaining the motion for
rehearing, and holding the evidence competent under the rule.

APPEAL from the District Court of Erath.    Tried below before
the Hon. T. L. Nugent.

This is one of the series of convictions had under an indict-
ment charging the appellant, and Dave Smith, M. M. Smith,
Tom Saunders, Frank Saunders and Bud Taylor with theft of
cattle, the property in separate parts of E. M. Trammell and
W. A. Trammell.   The punishment assessed against the appel-
lant was a term of three years in the penitentiary.   The facts
proved upon this trial were essentially the same as those proved
on the trial of M. M. Smith, the report of which case, on page 107
of this volume, sets out the evidence in full.

*C. K. Bell* and *Lee Young* filed an able brief and argument for
the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE.    The indictment charges, *inter alios,* that
defendant took five head of cattle from the possession of Eugene
W. Trammell, their owner, and eight head of cattle from the
possession of W. A. Trammell.    It seems that Eugene W.
Trammell was in possession of and owned five head of cattle;
that W. A. Trammell was in possession of and owned eight
head, and that, when taken, they were running together and
were taken at the same time.

The indictment alleged possession of, and ownership to, the
five head in Eugene W. Trammell, and a similar allegation
with reference to the eight head, to-wit, that they were taken
from the possession of, and were owned by, W. A. Trammell.
The allegation of the want of consent is as follows: "Without
the consent of the said owners."

It is urged by counsel for defendant that this is not sufficient,
because each owner's consent is not denied.    This criticism is
just; but, under the allegations of this indictment, is it essential
to the sufficiency of the indictment for the consent of each, to
the taking of all the cattle, to be denied?    It is not alleged that

Eugene W. Trammell owned, controlled, or had possession of the eight head of cattle; nor is it alleged that W. A. Trammell managed, controlled, or had possession of the five head. There was no authority in Eugene W. to give defendant, or any one else, his consent to take the eight head, or any part thereof. The fact that they were running together, when taken, certainly would confer no such anthority. These observations apply with equal force to the authority of W. A. to give consent to the taking of the five head, the property of Eugene. This is not a case in which there is joint possession or ownership.

Over objection of defendant the court admitted in evidence a conversation between M. M. Smith and one Kenyon. By the record it appears that Dave and Jim Smith started from their houses, near Poolville, in Parker county, coming after the cattle; that the witness Kenyon stayed all night at the house of M. M. Smith, for whom he was at work digging a well, and that, on the following morning at the cow pen, this being about ten or twelve days from the time when Dave and Jim started for the cattle, in the presence of the witness P. J. Morris, and the wife of M. M. Smith, there being in said pen three cows and calves, Kenyon remarked to M. M. Smith that he had one good cow, to which Smith replied that one of the cows was his own, and that the other two were estrays, but that he knew the men who owned them, and that he could buy them; that the owner of said cows was up in the spring and offered them to him for thirty dollars. To this Kenyon replied that it was cheap, and that he (Smith) ought to have bought them. To this Smith replied that he would buy them in the fall. Smith then said he had a bunch of cattle out west in which there were thirty two or thirty three head, but did not say in what county they were. Kenyon asked: "Are you not afraid that they will be stolen or stray off?" and asked Smith if he had any one looking after them. To this Smith replied that he "only paid for what he got." Defendant was not present at this conversation. Counsel objected: 1. Because irrelevant and calculated to prejudice his case with the jury. 2. That the declarations of M. M. Smith were not, and could not have been in furtherance of a conspiracy between himself and defendant to steal said cattle.

In his explanation appended to the bill the learned judge says: "That part of the evidence which relates to there being two stray cows in the pen was excluded. The only part of said conversation admitted referred to M. M. Smith's owning a bunch of

cattle out west, of thirty two or thirty three head.  The testimony actually admitted was expressly confined to the issue of intent of M. M. Smith, or conspiracy between him and Bud Taylor, and it was so expressly limited at the time it was admitted."

The second bill of exceptions presents very nearly, if not precisely, the same question.  It appears that P. J. Morris and Kenyon were digging a well for M. M. Smith, and that on Friday before Sunday, July 12, the men Dave and Jim Smith started for the cattle.  A conversation occurred between Morris, Kenyon and M. M. Smith.  The substance of it was that Smith asked Morris to lend him his horse to ride about a week to get a bunch of cattle he had out west in Erath county.  Morris agreed to and did lend him the horse, which was a sorrel.  Smith said he and Dave Smith were going after the cattle.  A discussion then arose as to the direction of Erath county from the parties, they being near Poolville, in the northern part of Parker, near Wise county.  Morris remarked that Erath was not west, but south of west, from where they were, and that Palo Pinto and Stephens counties were west.  Smith then said there were thirteen, fourteen or fifteen head of the cattle, and in reply to the remarks about the counties of Palo Pinto and Stephens being west, remarked: "Stephens, by God! that is where they are."  To all of which the defendant objected upon the grounds stated in the first bill, and the same explanation is given by the judge as to the first bill.

It appears from the third bill that the State proved by Morris and Kenyon that they began digging the well for Smith in the latter part of June, 1885, or the first part of July, and that during the first week of their employment, Bud Taylor came to Smith's, and that Smith and Taylor went away from the well to a shade, and there engaged in a private conversation, which was not heard by Morris or Kenyon, and that a few days after this, and before Smith borrowed Morris's horse, Bud Taylor came a second time, and he and Smith again went to the shade of a tree and had another private conversation; that while they were thus engaged, Morris and Kenyon went to the house for their dinner, and when they returned to the well they met Smith and Taylor going to the house.  We are informed by the learned judge that this testimony was admitted expressly on the question of conspiracy between M. M. Smith and Taylor.

The fourth bill informs us that the State proved by the witness James Lentz that he and Bud Taylor were at work on the farm of Henry Lentz, near Poolville, chopping cotton, on the third of

July, 1885; that Bud Taylor asked witness if he had ever "pulled anything." To this Lentz replied: "Nothing bigger than a watermelon." Taylor then said that he knew where there was a bunch of stray cattle, in which there were thirteen head, including one cow and calf, but did not describe the other cattle; that Taylor proposed that he would furnish a hand with whom Lentz should go and get the cattle and drive them to Cartersville prairie, and that there he would meet him with a lot of his own cattle, and drive them to Fort Worth, sell them and divide the money. Lentz replied that he would not do so. This evidence was also admitted for the purpose, expressly stated at the time, of showing a conspiracy between M. M. Smith and Bud Taylor.

The fifth bill complains that the State proved by John Guyger that at some time between June 1, 1885, and the middle of said month he saw Bud Taylor and Tom Saunders together back of Mrs. Saunders's farm, in Erath county; that Guyger, George Lidia, Tom Saunders and Bud Taylor were present. Guyger did not then know Taylor. That Tom Saunders called him "Bud," and he said he was looking for some cattle. Two or three days after Guyger first met Taylor in June, he, Taylor, went to Guyger's house, which is near that of Saunders, and said he had spent the night with Tom Saunders, and that he was looking for a bunch of stray cattle that belonged to him. He described them as being branded SD, and said there were other brands upon them, witness thought TW and $_{\text{J}}$E, but was not positive. Taylor said that the SD was the holding brand, and did not describe them by flesh marks. He, Taylor, said that Tom Saunders had told him the cattle ran around there. The same objection was urged in this as was urged in the first bill. To this bill there is appended the following by the learned trial judge: "The witness locates the alleged conversation at about the middle of June, 1885. It was further shown that witness and Tom Saunders at that time lived in Erath county, near the range where the cattle charged to have been stolen were running, and that it was in that neighborhood that he saw Bud Taylor and heard the declaration made by him as stated above."

From the sixth bill it appears that the witness Guyger testified, over defendant's objection, as follows: "In Big Valley, Parker county, about a quarter of a mile west from Buckner's crossing on the Brazos river, on July 16, 1885, a little after twelve o'clock m., he was at the house of Mr. James Barker, which was about twenty-five steps from the Stephensville, Mor-

Opinion of the court.

gan's mill and Weatherford public road, and saw a couple of men driving a bunch of from ten to fifteen cattle in the direction of Weatherford, on said road; that he knew both of the men well; that one was Tom Saunders and the other was Willis Brooks; that Tom Saunders lives about five and one-half miles from the house of the State's witness, Sweet, and that Brooks lives about the same distance from Sweet's as he from witness; that prior to this date, July 16, 1885, Brooks had been away from his house for some time. Appellant objected "because he was not in any way shown to be connected with the cattle described by witness Guyger, nor with said transactions, nor with Saunders or Brooks; that said testimony was irrelevant, calculated to prejudice him with the jury, and relates to another and different offense from the one with which he is charged."

To this bill there is also an explanation. The learned judge says: "There was no objection at the time to the evidence relating to Brooks having been away from his house. That which the defendant did really object to, was the general testimony of the witness that he saw the bunch of ten to fifteen cattle at the time and place stated, in charge of Tom Saunders and Willis Brooks, which were being driven in the direction of Weatherford from the direction of Morgan's mill. This was on the sixteenth day of July, 1885. It had been shown that defendant, Dave Smith and Tom Saunders were seen about the middle of this month, at about twelve o'clock in the day, by Wesley, in charge of twenty-five or thirty-five cattle, going in the direction of Weatherford, along the same road and only about a half mile from the same place. at which witness saw Saunders and Brooks, a part of which cattle were clearly identified as the cattle taken from the range near Sweet's by defendant, Dave Smith and Tom and Frank Saunders. The herd of twelve or thirteen cattle with which these parties started from Sweet's in the direction of Weatherford, had, when seen by Wesley, grown to a herd of twenty-five to thirty-five. This increase in the size of the herd was thus accounted for by Guyger's testimony, and seemed to me (the judge) admissible, both on the question of knowledge, and to identify the transaction by developing the *res gestæ.*"

We will treat of the questions presented in the first, second, third, fourth and fifth bills of exception together, for they present the same matters. Were the conversations and statements —the facts shown to have been proven by these bills—competent

evidence for the purpose to which they were expressly limited by the court, at the time of the admission, as well as by the charge of the court? We think so.

The theory of the State appears evident when we look to the statement of facts. It is that M. M. Smith intended to capture this bunch of cattle; that for weeks he was engaged in manufacturing evidence to support a claim to them; that after he had succeeded (as he thought) in building up a title to the same, being aided by Bud Taylor, he sent the defendant, with Dave Smith and others, to Erath county to bring these cattle to his house, from thence to be taken by him to Fort Worth, to be disposed of to his and his co-conspirators' benefit; that M. M., Jim and Dave Smith and Bud Taylor were co-conspirators, each entering, perhaps, into the conspiracy at different times, but each responsible for the acts of each and all. Now, it is contended by appellant, that as there is no proof that defendant was a member of the conspiracy at the time these acts and declarations were done and made, therefore these acts and declarations of M. M. Smith and Bud Taylor are not admissible against him.

Upon this subject Mr. Greenleaf says: "It makes no difference at what time any one entered the conspiracy. Every one who does enter into a common purpose or design is generally deemed, in law, a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of the common design." (1 Greenl. Ev., sec. 111.) If, therefore, appellant entered into the conspiracy at any time before consummation, each and every act and declaration made in pursuance of the common design is competent evidence against him. But suppose there was no conspiracy between Bud Taylor and M. M. Smith, and no conspiracy between M. M. Smith and any person, at the time of the occurrence of the acts, or when the declarations were made. Are such acts and declarations, made in the absence of a conspiracy with any person, admissible? We think so, for if M. M. Smith intended to steal or have the cattle stolen by others, certainly the State might prove it, and by connecting the appellant with the fraudulent intent of M. M. Smith, and by showing that he took possession of the cattle in pursuance of this fraudulent intent, and with knowledge of the same, hold him guilty of theft. This fraudulent intent on the part of M. M. Smith was attempted to be shown by circumstances. This

was proper. Let us suppose that M. M. Smith had, in the most positive terms, stated that he was engaged in fabricating a claim to the cattle; that he intended to have them taken by others, and that he would dispose of them to their joint interest. Would not the State have the right to show this? Very clearly, to our minds, she would.

Again, the defense in this case rests upon the theory that the defendant was ignorant of M. M. Smith's fraudulent intentions; that he acted in good faith, believing that M. M. Smith's title to the cattle was just and legal. Would not the State be permitted to prove the *animus furandi* of M. M., and by proving M. M.'s fraudulent intent to the knowledge of defendant, hold him responsible as a co-conspirator and convict him of the theft? This seems to us a very plain proposition, and in harmony with the simplest rules of justice, especially where considered in connection with the fact that the learned judge restricted at the time, and in his charge to the jury, these acts and declarations to a particular purpose, to-wit, to show the intent of M. M. Smith, or a conspiracy between him and Taylor, telling the jury that the declarations of defendant's co-defendants were not in any sense to be regarded as evidence tending to show in any degree the guilt of the defendant, unless the other evidence shows, beyond a reasonable doubt, that defendant knew of such common design or agreement, or of the fraudulent intent of M. M. Smith. By this charge no sensible jury could hold defendant responsible for the acts or declarations of M. M. Smith or Bud Taylor, nor convict defendant upon the acts and declarations of M. M. Smith and Taylor.

By this charge the State was held to prove, not by the acts and declarations of M. M. Smith and Bud Taylor, but by the *other evidence* in the case, that defendant knew of the conspiracy between M. M. Smith and Taylor, or that he knew of the fraudulent intent of M. M. Smith, in order to convict defendant. Is the proposition enunciated in the charge correct in law ? If A. fraudulently intends to deprive the owner of his stock, and B., with knowledge of A.'s intent, takes the stock from the possession of the owner, claiming them as the property of A., is he not in every sense essentially a thief ? We think so.

The sixth bill presents quite a different question from that raised in those already considered. From this bill it appears that the State proved that Willis Brooks and Tom Saunders, about the same time that defendant and others took the cattle

in question, and in the same neighborhood, were seen driving a bunch of from ten to fifteen head of cattle along the Weatherford road towards Weatherford, and from the direction of Morgan's mill. This evidence was admitted upon the ground that it identified the transaction, and because defendant was seen about the same time, perhaps the same day, further on the road towards Weatherford, in company with other parties suiting the description of Saunders and Brooks, with a herd increased from thirteen to twenty-five or thirty-five head. This evidence was also admitted for the purpose of showing a guilty intent in taking the Trammell cattle.

This is as strong a statement for the State as the facts will possibly warrant. In fact it assumes that defendant and Saunders and Brooks *got together*, united the several herds, and drove their cattle off towards Weatherford. Now, we would remark just here that the primary facts should be most clearly proved before a predicate can be laid for an inference. This, however, by the way.

Let us concede that the above statement is authorized by the facts, and the question remains: Was the evidence competent? The rule upon this subject is as follows: It is competent for the State to prove that other property was stolen at or about the same time, and in the same neighborhood from which that in question was stolen, when necessary to establish identity in developing the *res gestæ*, or in making out the guilt of the defendant by circumstances *connected with the alleged theft*, or to explain the intent with which the accused acted with respect to the property, for the theft of which he is being tried. (Jones v. The State, 14 Texas Ct. App., 85; Galbreath v. The State, 41 Texas, 567; Davidson v. The State, 12 Texas Ct. App., 215.)

Applying the above rule, there is an insuperable objection to the admission of the evidence under discussion. There is no proof that the cattle seen in possession of Brooks and Saunders had been stolen at or near the same time the cattle in question were taken, nor is there evidence of the slightest weight showing that these cattle were taken from the same vicinity from which the Trammell cattle were taken. The cattle seen in possession of Saunders and Brooks may have been stolen months before, and a hundred miles from the place at which the Trammell cattle were taken. And again, the proof that the defendant was ever in *possession*, either alone or jointly with others, of the Brooks and Saunders bunch, is too meager and uncertain to form the

basis of any conclusion whatever.   Defendant and others took the Trammell cattle and proceeded to drive them along the public road towards Weatherford.   He may have accidentally overtaken Brooks and Saunders, or he may have been overtaken by them, and if so, it was quite reasonable, and equally harmless, for the parties to drive them on in one herd together.   How far the Brooks and Saunders bunch was driven, whether one or fifty miles from the place at which they were seen by Guyger, the record is silent.   And it is equally and strongly silent as to whether defendant knew anything whatever relating to the Brooks and Saunders cattle or their purpose.   Were the cattle stolen in that neighborhood?   If so, when?   Did defendant have knowledge of any of the facts?   These are very important questions, and should be answered by the evidence.

Was the evidence under discussion so connected with a material and competent fact—a fact compétent in this case—that its rejection would result in the exclusion of, weaken, or render less clear or pertinent the competent fact?   If so, it should have been received.   But here again we fail to perceive any connection between this evidence and a competent fact in the case.   Did this evidence tend to elucidate the intention of defendant in taking the Trammell cattle?   We have not been able to possibly comprehend in what manner.   We therefore conclude that the evidence was incompetent, and calculated to prejudice the defendant's cause with the jury.

Quite an array of objections are urged to the charge of the court, but I must say that within the range of my experience I have never read a charge in which the law of the case was more pertinently applied.   Viewed in the light of the facts and as a whole, it is a most admirable charge.   The rights of the defendant are guarded with a strong arm.   In this charge each hypothesis favorable to appellant is clearly presented to the jury; not sparingly, nor negatively, but liberally and affirmatively.   With the writer this charge is a model.

Counsel for appellant objects because the jury were not instructed that one accomplice could not corroborate another. This is a correct proposition, but after a very careful examination of the evidence, we fail to find anything tending to show more than one, if indeed it does show one, accomplice.

Other questions will not likely arise on another trial, and we will not discuss the sufficiency of the evidence to support the verdict.

Because the court erred in admitting in evidence the fact that Brooks and Saunders were seen in possession of the bunch of cattle, discussed *supra*, the judgment is reversed and the case remanded for another trial.

[The foregoing opinion, reversing and remanding the case, was delivered at the Galveston term of this court, on March 10, 1886. A motion for rehearing was subsequently filed by the Assistant Attorney General, which, together with all of the papers in the case, was taken under advisement, and transferred to the Austin branch of the court. In the opinion of Willson, Judge, which follows, the said motion, on the fifteenth day of June, 1886, was granted, and the judgment was affirmed. Properly, this report would take its place among the decisions rendered at the Austin term, but as frequent reference is made to its companion cases, M. M. Smith v. The State, *post* page 107, and Dave Smith v. The State, *post* page 134, it is, as a matter of convenience to the profession, assigned a place along with the cases named.—REPORTERS.]

## ON MOTION FOR REHEARING.

WILLSON, JUDGE. A majority of the court, after a thorough re-examination of the record, are convinced that the testimony of the witness Guyger, in relation to a bunch of cattle which he saw being driven by Tom Saunders and Willis Brooks, was admissible against the defendant. Other evidence adduced upon the trial connected Tom Saunders with the taking of the alleged stolen cattle, and tended strongly to prove that Saunders was acting together with the Smiths in the theft of the cattle in controversy. Guyger's testimony was admissible, we think, because it sufficiently appeared that he was a principal in the theft with this defendant and others; and also upon the further ground that it tended to trace and identify the stolen cattle. This same question arose in the case of Dave Smith v. The State, *post*, page 134. That case was a companion to this one, and the facts of the two cases the same. In a written opinion in the Dave Smith case, delivered by Presiding Judge White, the question of the admissibility of this identical testimony was fully discussed, and it was held to be admissible. It is only necessary here to refer to that opinion for our views in full upon the matter.

The motion for a rehearing is granted; the judgment reversing the judgment of the trial court and remanding the cause is set aside, and the judgment of conviction is affirmed.

*Affirmed.*

Opinion delivered June 15, 1886.

21 107
28 244

21 107
31 310
31 414

21 107
33 358
133 400

21 107
35 98
38 56