W. J. Fluewellian, alias Roy Powell, alias W. J. Fluewelling
v. The State.

No. 559.  Decided April 19, 1910.

Rehearing denied May 18, 1910.

**1.—Forgery—Bill of Exceptions—Evidence—Practice on Appeal.**

Where, upon appeal from a conviction of forgery, the bill of exceptions did
not disclose the grounds of objection to the testimony offered, the same could
not be considered; besides the testimony was pertinent and relevant to· the
issues in the case to show want of consent and authority to sign the alleged
forged instrument.

**2.—Same—Evidence—Declarations of Defendant.**

On trial for passing a forged instrument, there was no error in admitting
testimony that the defendant made contradictory statements as to where he was
going on the day he passed the alleged check.

**3.—Same—Evidence—Practice in District Court.**

Upon trial of passing a forged instrument, there was no error in permitting
the State to introduce testimony after the defendant had. introduced his testi-
mony, showing that the defendant went by a fictitious name.

**4.—Same—Argument of Counsel.**

Where, upon trial of passing a forged instrument, the State's counsel used
improper remarks in his argument, but it was shown that the same had been
provoked and invited by defendant's counsel, there was no error.

**5.—Same—Misconduct of Jury.**

Where, upon trial for passing a forged instrument, testimony was admitted
without objection that the defendant had registered at a hotel with a prostitute
under an assumed name, which testimony the court verbally stated should not
be considered by the jury, but it was shown after trial that the jury did con-
sider same.  Held that such testimony was admissible and there was no im-
proper conduct on the part of the jury in discussing the same; besides the record
showed that this did not influence the jury in finding a verdict.

Appeal from the District Court of Jefferson.  Tried below before
the Honorable L. B. Hightower.

Appeal from a conviction of passing a forged instrument; penalty,
two years imprisonment in the penitentiary.

The opinion states the case.

*Alfred duPerier,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, Judge.—Appellant was indicted, tried and convicted of
passing as true a forged instrument, and his punishment assessed at
confinement in the penitentiary for two years.

No complaint in the motion for new trial is made to the charge· of
the court.  We find in the record five bills of exceptions.  The first
bill of exceptions is to the action of the court in permitting the State

to put Aubrey Fletcher and Ovay Fletcher upon the witness stand,
and prove by them that they had no money in the bank upon which
the check was drawn and that neither of them signed the check upon
which the indictment in this case was based; that they did not give
the defendant their consent to sign their names to the check and that
they did not know anybody by the name of Obrey Fletcher. The
bill of exceptions, however, does not state the grounds of the objec-
tion, the bill simply stating that the defendant objected to said tes-
timony and asked the court to strike out the same from the record.
We can not consider a bill of exceptions which does not disclose in
the bill the grounds of objection to testimony offered. The bill of
indictment in this case alleged that the defendant forged the name
of Obrey Fletcher to a certain check and in the second count, upon
which he was convicted, of knowingly passing as true, a certain forged
check purporting to be executed by one Obrey Fletcher. By this
testimony the State was evidently attempting to prove that there was
no such man in existence as Obrey Fletcher, and that if the check
was intended to be the act of Aubrey or Ovay Fletcher, that neither
of these gentlemen authorized the defendant to sign their name to
the same, and that they did not sign it. The testimony was relevant
and pertinent to the issue in the case. But, as before stated, inde-
pendent of this, in the absence of the bill of exceptions disclosing the
grounds of the objection to the testimony, we can not consider same.

2.   Bill of exceptions No. 2 is to the action of the court in per-
mitting the State to introduce one Dan Wilson and prove by him
that the defendant on the day that he passed the check, boarded the
Santa Fe train and stated to the witness that he was going to Sour
Lake and that the witness was on the same train with the defendant,
and that the defendant did not go to Sour Lake but went to Hous-
ton; that defendant told him, witness, that he had changed his mind
about getting off at Sour Lake and would continue on to Houston.
This testimony was objected to because it was immaterial and irrele-
vant, and did not rebut any testimony introduced by the defendant.
We think the testimony was relevant, material and that the State
had the right to put this witness on the stand at any time during
the trial.

3.   The third bill of exceptions is to the action of the court in
permitting the State to prove by one Gauthier that he lived at Lake
Charles, Louisiana, and that he did not know any man there, and
never heard of any man there by the name of Fluewelling. This was
objected to on the ground that it was offered, after the State had
closed its case, and that the same was not in rebuttal, or in contra-
diction of any testimony offered by defendant. The defendant claimed
that he was going by the name of Fluewelling and that he had met
Fluewelling at Lake Charles, Louisiana, and had formed a partner-

ship with him and that he got this check from him in settlement of their partnership and that the check was not indorsed, and that he indorsed it by signing Fluewelling's name to it. This testimony was relevant, and the State had a right to introduce the same, as the statute authorizes the introduction of testimony at any time before the argument is concluded.

4. Bill of exceptions No. 5 is to the action of the county attorney in using the following remarks in his closing argument to the jury: "There is no lawyer in Beaumont that would make that statement (referring to the statement by counsel for defendant that defendant had been acquitted yesterday on a similar charge) except Mr. du Perier." And further: "That the jury that found the verdict of acquittal on yesterday are all ashamed of that verdict. I spoke to two of the men on that jury, who voluntarily told me they were ashamed of it." The bill of exceptions discloses that the defendant complains of this because nothing the defendant's counsel had said provoked it and that it was highly prejudicial to the rights of the defendant. The court in his qualification to the above bill stated that while the county attorney did make the remarks complained of, that defendant's counsel in addressing the jury repeatedly harped upon the fact that the defendant had been acquitted by a jury on the day before on the forgery of a similar check under similar facts and circumstances, and the county attorney objected to this argument, and the court admonished defendant's counsel that such remarks were improper and that thereupon defendant's attorney very dramatically replied to the objection of the county attorney, and the admonition of the court by asking if anybody was ashamed of that verdict; and he further assured the jury that nobody was, and the defendant's attorney continued to comment upon the previous acquittal and the court again warned him that such remarks were improper, and stated to counsel that the attorney for the State would be permitted to reply to such remarks when defendant's attorney stated that the county attorney could have as wide a range in his argument as he desired and that he would make no objection to anything he said. If the remarks of counsel for the State were improper such remarks had been provoked and invited by the defendant's counsel, and when he was admonished by the court to desist he stated the county attorney might have as wide a range as he saw proper. We think under the qualifications of the judge that the remarks of the county attorney had been provoked by appellant, and if error was committed, defendant's attorney by his course in the argument had invited same. We, therefore, overrule this bill of exceptions.

5. Bill of exceptions No. 4 complains of misconduct on the part of the jury. In the trial of the case, it would appear from the record, that when the defendant took the stand, he testified his name

was Powell and that he had assumed the name of Fluewelling for
business purposes.    On cross-examination State's counsel asked him
if he had not stated one night in a saloon to a certain party that
his name was Bates.    Defendant's wife was in the courtroom at the
time the State asked this question.    The defendant asked the court
to have his wife to retire.    He made no objection to answering this
question but stated it was true that he had gone by the name of
Bates on a certain night; that he had registered at a hotel with a
prostitute under the assumed name of Bates, as he did not desire to
register under his correct name, as it might affect his business.    When
he made this statement the court of his own motion, without objec-
tion being made by either defendant or his counsel, or State's counsel,
stated to the jury that they would not consider this matter as the
defendant was not being tried for adultery but for forging a check.
The matter stopped here; the jury retired to consider of their ver-
dict and remained out about a half hour and returned with a ver-
dict of guilty.    When the jury first went out they took one ballot
and stood eleven for conviction and one not voting.    This juror's
name was Green.    On the motion for new trial Green testified that
he began to give his reasons why he was not willing to vote guilty,
when some one remarked that defendant was going around under as-
sumed names and sleeping with prostitutes.    The other jurors spoke
up and said that had nothing to do with the case.    This juror stated
that he could not get this out of his mind as defendant had testified
to it and that he thought it was reprehensible for a married man to
be staying at hotels with prostitutes, and while he assented to the
verdict of guilty of forgery he was not prepared to say that this did
not have some effect on his reaching a conclusion in the matter.    Six
jurors in all were examined on the motion for new trial.    Five of
the jurors testified positively and unconditionally that the fact that
the defendant had testified to this matter did not influence them in
reaching a verdict.    While it is true the court told the jury that they
could not consider this matter, the defendant put this matter in tes-
timony and the jurors all knew it.    In the first place we are of opinion
that this testimony was legitimate and proper.    The defendant was
offering it as an excuse why he was going under an, assumed name.
The State was proving as a circumstance in the case that the defend-
ant was concealing his right name and assuming different names.    The
defendant offered this as a justification why he went by the name of
Bates.    We think he was entitled to show this and it had a right to
go to the jury for what it was worth.    We therefore conclude that
the testimony was not improper; that the jury was in possession of
the fact and knowing the fact, to mention it was not introducing
new or additional matter before them, and because they might have

had this in mind at the time they reached a verdict would not be grounds for setting aside their verdict. We, therefore, hold that the jury was not guilty of improper conduct.

The evidence abundantly supports the verdict of the jury; the charge of the court was a fair presentation of the issues in the case, and finding no. error in the record, the judgment of the lower court is in all things affirmed.

*Affirmed.*

[Rehearing denied May 18, 1910.—Reporter.]