## WEST v. STATE.
### No. 19326.

Court of Criminal Appeals of Texas.
Jan. 26, 1938.

Rehearing Denied May 18, 1938.

Ben Cone, of Luling, and J. W. Ragsdale, of Victoria, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of theft of property over the value of $50, and his punishment was assessed at confinement in the state penitentiary for a term of five years.

Appellant's first contention is that the evidence is insufficient to justify and sustain his conviction. After a careful analysis of all the facts and circumstances proved, we find ourselves unable to agree with him.

The record shows that some time in the early part of December, 1936, Jim Robbins came to the home of Mrs. Ima Barfield, ostensibly for the purpose of obtaining from her an oil and gas lease on a tract of land situated in De Witt county. He told her at the time that he was working for an oil company. She advised him that she had already sold her land. On this occasion, he engaged a room at her home for the night.

A few days later, he came back with a man by the name of Bert Wiley Barnes. They both engaged a room for the night. Still a few days later, they both returned, telling her they were still trying to get oil leases. On this occasion, only Barnes spent the night, and during the evening he asked Mrs. Barfield to assist them in getting leases, saying that since she knew nearly every one, she could be of great assistance to them. He also said that he would like to put through a deal in her name in Brewster county, for which he and Robbins were willing to pay her $250 apiece. On the 22d day of December, Barnes again engaged a room, and during the evening informed her that he and Robbins had gotten in touch with a man who owned an oil lease on block No. 121 in Brewster county which they could sell to the Sea Board Oil Company for $25 per acre; that the man who owned the lease would be in Stockdale on the following morning where they could meet him. The next morning, she accompanied Barnes to Stockdale. Upon their arrival, they saw Robbins near the hotel. Barnes called him to the car and inquired of him if the man was at the hotel. Robbins replied that he would find out. In a short time, Robbins returned and stated that the man was there. Barnes, in the presence of Mrs. Barfield, instructed Robbins to offer appellant $5 or even $10 per acre for the lease, but no more. Mrs. Barfield then went with Robbins to the hotel where Robbins, in the presence of Mrs. Barfield (although he and appellant had come from San Antonio together that morning), introduced himself to appellant and then told him that he had come to buy the lease on block No. 121 in Brewster county. Appellant replied that "the lease and my wife are two things I would never sell."

After some discussion, appellant agreed to take $12.50 per acre for the lease, provided the money was paid in cash immediately, as he had to leave town in a few hours. Robbins, Barnes, and Mrs. Barfield then drove to La Vernia, where Barnes claimed to have telephoned some party about the money. Then, in the presence of Mrs. Barfield, he told Robbins that the party would let him know in a few minutes if he could let him have the necessary amount of money. About fif-

teen minutes later, Barnes went to the depot and returned with a telegram, stating that the man could put up only one-half of the required amount, and the remainder in a few days. This apparently perplexed both Barnes and Robbins, because it seemed that the money was needed at once or the deal, which promised to yield such a handsome profit, would fade away.

Mrs. Barfield, seeing their apparent predicament, suggested that she put up the money needed to close the deal, for which they were to give her $2,500, to which they agreed. Thereupon, an assignment of the lease was executed and delivered to her, whereupon she gave appellant a check on the Buchel National Bank of Cuero in the sum of $4,000.

Mrs. Barfield testified that she believed all of the representations and statements made to her and in her presence; that she believed that Robbins and Barnes were employed by the Sea Board Oil Company and could turn the lease to that company; that otherwise she would not have given appellant the check.

It developed upon the trial that West did not own the lease at the time he made an assignment thereof to Mrs. Barfield, and did not acquire it until next day, when he paid $160 for it. The record further discloses that a few days prior thereto he had inquired of Mr. Cabett of San Antonio if he had any oil lease on land in Brewster county, or knew of any person from whom he might obtain one, as he wanted one for the purpose of selling it.

The uncontradicted testimony shows that Robbins, Barnes, and appellant lived in San Antonio, and had known each other for some time; that on the morning of December 23, the day the alleged fraud was perpetrated, Robbins and appellant left San Antonio together in a car and went to Stockdale, where appellant went to the hotel and Robbins loitered about on the streets nearby, waiting for Barnes' arrival with the prospective victim.

Robbins, by introducing himself to appellant in the presence of Mrs. Barfield, intended to create the impression that they had never before met, and appellant sought to create the impression that he was a married man by his statement that "his wife and the lease were two things he would not part with," when as a matter of fact he was single. Appellant had

not, at that time, purchased the lease; he had merely spoken to Cabett concerning it. It is obvious that his intention to buy the lease depended on the success of their scheme; if it miscarried, he would have no need for it.

There was also testimony to the effect that oil and gas leases on land in Brewster county could be had at 10 cents per acre; that there was no oil development of any kind in said county. All the circumstances proved, when considered together, clearly establish the falsity of their statements to Mrs. Barfield, and their fraudulent intent.

Whether or not Barnes and Robbins were in fact employed by the Sea Board Oil Company is of very little moment, because they induced Mrs. Barfield to believe that they were so employed. If they were not, then their statements to her were false; and if they were so employed, and failed to request and accept a transfer from Mrs. Barfield of the lease at the agreed price of $25 per acre, it would show a fraudulent intent on their part.

After they had obtained Mrs. Barfield's money, they apparently lost all interest in oil and gas leases; they never came back to see her or to return her the money she had advanced, or give her any part of the $2,500 which they had promised her. To our minds, the facts, when properly analyzed, show a conspiracy on the part of appellant, Robbins, and Barnes to steal Mrs. Barfield's money by a false pretext. They set the trap and lured her into it. We think that the testimony is sufficient to sustain the jury's conclusion of appellant's guilt.

Bill of exception No. 1 reflects the following occurrence: Dewey Schorre, the first witness for the State, testified that he was an active executive officer of the Buchel National Bank in Cuero, Tex. That the ledger before him showed a charge made against the account of Mrs. Barfield at the bank and paid to the defendant, and that the other charges came out of San Antonio.

Appellant objected to this testimony on the ground that there was a variance in the name of the bank as alleged in the indictment and the proof. The indictment alleged the name to be "Buchel National Bank of Cuero, Texas," and the proof showed the name of the bank to be "Buchel National Bank in Cuero, Texas." We do not deem the variance

material, because the officers of the bank testified that the money was paid to appellant at said bank, and there is no evidence of a bank in Cuero named the "Buchel National Bank in Cuero." The objection that the entries are hearsay is without merit. The entries were made in due course of the business hours of the bank, and reflected the transaction as it actually occurred as shown by the testimony of Mrs. Barfield and Mr. Schorre.

By bill of exception No. 2, appellant complains of the testimony of Mrs. Barfield as to what Jim Robbins told her about being in the employment of the Sea Board Oil Company; that he was trying to lease land in De Witt county for his company; that he tried to lease a tract from her; what Robbins and Barnes told her when they stayed at her home overnight about assisting them in obtaining leases; the deal which they wanted to put through in her name, etc. Appellant objected to said testimony because it was between third parties, hearsay, and because no conspiracy had been shown to exist between Barnes, Robbins, and appellant at the time.

The conspiracy may not have been shown at that time, but the introduction of subsequent testimony established a conspiracy between the parties. Even though appellant had not engaged in the conspiracy at the time, but joined it later, he thereby adopted all that was said and done by his coconspirators prior to the time he joined. See Branch's Penal Code, § 693. Also, Smith v. State, 21 Tex.Cr.R. 96, 97, 17 S.W. 560; Harris v. State, 31 Tex. Cr.R. 411, 20 S.W. 916; Blain v. State, 33 Tex.Cr.R. 236, 26 Tex.Cr.R. 63; Hatcher v. State, 43 Tex.Cr.R. 237, 65 S.W. 97.

By bill of exception No. 3, appellant complains of testimony offered by the State relating to conversation, acts, and discussion, between Robbins, Barnes, and Mrs. Barfield in the absence of appellant. He objected to all of said testimony upon the same grounds as stated in bill No. 2, and for the same reasons we overrule this bill.

By bill of exception No. 4, appellant complains of the following testimony given by Mrs. Barfield, to wit: "The day after I gave to the defendant a check aggregating $4,000., Barnes and I went to Alpine, Texas to have the lease recorded."

Appellant objected on the ground that the acts of and conduct of the witness in the absence of appellant would not be admissible against him; that said testimony was immaterial, irrelevant, and had no probative force tending to establish the offense charged; that whatever Barnes did or said after the conspiracy had terminated was not admissible against any one but Barnes.

Conceding that the conspiracy had terminated and the testimony was not admissible, we fail to see how it prejudicially affected appellant's legal rights. The act of Barnes in accompanying Mrs. Barfield to Alpine did not tend to show any connection with the claimed conspiracy; nor is it shown that he did or said anything which tended to show that a conspiracy had existed between the parties. Consequently, the admission of the testimony did not harm appellant's rights.

Moreover, the appellant, himself, proved by Mr. Frazier, the county clerk of Brewster county, that Mrs. Barfield, accompanied by some man, came into the county clerk's office at Alpine and filed the assignment of the lease for record. Appellant's objection to Mrs. Barfield's testimony is without merit, inasmuch as he offered similar testimony. See Sparkman v. State, 128 Tex.Cr.R. 627, 82 S.W.2d 972; Enix v. State, 112 Tex.Cr.R. 376, 16 S.W.2d 818; Pyor v. State, 88 Tex.Cr.R. 211, 225 S.W. 374, 375.

Bill of exception No. 7 complains of the following argument by the district attorney when addressing the jury: "I tell you he cheated this woman and defrauded her out of her money."

Appellant objected on the ground that it was prejudicial and was permitting the district attorney to testify while making an argument. We think that the argument was a reasonable deduction from the testimony adduced, and hence presents no error.

Bill of exception No. 6 complains of the following argument by the district attorney, to-wit: "The court, after hearing the witness, tells you that if you believe that such charge, as contained in the indictment, has been made out, the state has established a prima facie case, so I say when this case is presented to you, when you are sent up there after the court has charged you, you hear the argument, that in the court's opinion sufficient evidence has been introduced

to allow the jury to pass on the case whether or not the defendant is guilty, that is the reason it is submitted to you."

Appellant objected thereto on the ground that it was improper, prejudicial, and calculated to induce the jury to believe that the court was convinced that the defendant was guilty. The court qualified said bill, and in his qualification states that said argument was in reply to the argument of one of appellant's attorneys, who contended that the case was not properly brought; that if defendant was guilty of any crime, it was swindling and not theft; that the district attorney did not know how to bring a case; that the jurors, who were voters, should elect a district attorney who knew how to bring his case into court by proper indictment.

We do not regard the argument complained of, under the facts of this case, of such a prejudicial nature as to require a reversal of the judgment. Appellant did not offer any affirmative defense, nor did he controvert the State's testimony. He merely relied on the State's failure to show a case of theft. Construing the argument in the light of the court's qualification, it amounts to this: The court, after hearing the witnesses, submits the case to the jury; if they believe the State's testimony to be true, then under the law, as contained in the charge, it shows a prima facie case of theft.

Moreover, the argument was provoked by argument of appellant's attorney. See Fluewellian v. State, 59 Tex.Cr.R. 334, 128 S.W. 621; Campbell v. State, 35 Tex.Cr.R. 160, 32 S.W. 774.

Bill of exception No. 8 complains of the refusal of the trial court at the conclusion of the State's testimony to instruct the jury to return a verdict of not guilty. We do not deem it necessary to discuss this question, as it was disposed of by holding that the testimony was sufficient to sustain appellant's conviction.

Bill of exception No. 5 reflects the following occurrence: Appellant, at the hearing of his motion for a new trial, placed H. E. Pahmeyer, a juror, on the stand, and propounded to him the following question: "Mr. Pahmeyer, you, as a juror, did consider the fact that the defendant failed to testify in his own behalf during your deliberations as to his guilt or innocence, did you not?"

The district attorney objected to the question, and the court sustained him. The appellant requested the court to require the witness to answer the question for the purpose of the bill and to show that said juror did consider appellant's failure to testify as a circumstance against him.

We do not think the court committed any error in this respect. The question was leading and suggestive of the answer desired; moreover, the appellant had no right to inquire into the juror's state of mind so long as there was no discussion among the jurors of appellant's failure to testify. See Randall v. State, 121 Tex.Cr.R. 563, 49 S.W.2d 819.

By bill of exception No. 12, appellant complains of the action of the trial court in overruling his motion for a new trial based on the alleged misconduct of the jury in discussing appellant's failure to testify. At the hearing of the motion, appellant placed Jas. H. Dagg upon the witness stand, who testified that after they had discussed appellant's guilt and had all agreed that he was guilty, but before they had agreed upon the penalty, Alfred Belitz said that it looked like if he was innocent the man would have taken the witness stand and tried to defend himself. After Belitz made that argument, he, Dagg, gave the defendant a greater penalty.

Belitz denied that he in any way referred to appellant's failure to testify, and the other jurors testified that they heard no such remark in the jury room. Therefore, it became a question of fact whether such statement was ever made by Belitz in the jury room, and this issue was determined adversely to appellant. The court's finding of fact on a controverted issue is binding on this court.

Appellant made no objection to the court's charge on the ground of the court's failure to instruct the jury on the law of circumstantial evidence, but complained thereof for the first time in his motion for a new trial.

All other matters complained of have been duly considered by us, and are overruled.

We note that the court, in sentencing appellant, failed to take notice of the indeterminate sentence law, and sentenced appellant to five years in the penitentiary. The sentence will be reformed to read that appellant will be confined in the state penitentiary not less than two nor more than five years, and, as thus reformed, the judgment is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

HAWKINS, Judge.

In view of appellant's motion for rehearing we have again carefully examined the statement of facts. We cannot agree that the evidence does not support the verdict. The general conclusions reflected by our original opinion we still believe to be correct. Our statement, "the uncontradicted testimony shows that Robbins, Barnes and appellant lived in San Antonio and had known each other for some time," is challenged as not supported by the record. It would have been more accurate had we said in substance that appellant lived in San Antonio and their joint operation in the undertaking reflected by the record would indicate that Robbins and Barnes were not strangers to him.

Believing the case was properly disposed of originally, the motion for rehearing is overruled.