PEOPLE v. McELHENY.

1. CRIMINAL LAW—CONSPIRACY—EVIDENCE—OTHER OFFENSES—IN-
TENT.

In the prosecution of a drain contractor and the drain
commissioner for conspiracy to defraud a certain drain
fund, where the defense was that, while what they did
might have been illegal, they acted in good faith, relying
on advice of counsel, evidence that another drain fund
had been overdrawn by the defendants in the same way
as the one in question was admissible for its bearing
on the question of intent.

2. SAME—EVIDENCE—CONVERSATION AS A WHOLE ADMISSIBLE.

Where a witness was testifying as to a conversation had
with defendant drain commissioner at the time the drain
irregularities were being investigated by the board of
supervisors, a statement by him to defendant that, "I
do not want to do you an injustice, but you have been
imposed upon by an unscrupulous rascal," and we want
you to tell the truth," held, admissible as against said
defendant; the jury being entitled to the entire conversa-
tion.

3. SAME—ADMISSIONS.

Testimony by a witness that defendant contractor had, in
a conversation with him, stated that he secured estimates
doubling the amount of work done by tipping the
engineer, held, admissible, as bearing upon the good faith
and character of his act, although the case against the
drain commissioner involved in said act had been dis-
missed.

4. SAME—TRIAL—ARGUMENT OF COUNSEL—PROSECUTOR'S OPINION
BASED ON EVIDENCE NOT ERROR.

It was not error for the prosecutor to state to the jury
that he believed from the evidence that defendants were
guilty.

5. Same—Appeal and Error—Objection Not Presented by Record Not Considered.

Objection to argument of the prosecutor, which is not in the record, and which the prosecutor denied making, *held*, to present no question for this court to consider.

Exceptions before judgment from Berrien; White (Charles E.), J.     Submitted October 12, 1922. (Docket No. 151.)     Decided December 5, 1922.

Clarence J. McElheny and Abner Moon were convicted of conspiracy. Affirmed.

*A. P. Cady* and *V. M. Gore*, for appellants.

*Merlin Wiley*, Attorney General, *Asa K. Hayden*, Prosecuting Attorney, and *John J. Sterling*, Assistant Prosecuting Attorney, for the people.

BIRD, J. The defendants were charged with and convicted of the offense of conspiracy to defraud the Dowagiac river drain fund and several municipalities in the county of Cass.     The information was filed in Cass county, but the case was subsequently transferred to Berrien county for trial.     In the year 1915 a tri-county drain was initiated by petition which should traverse the counties of Cass, Van Buren and Berrien, and be 30 miles in length.     The usual proceedings followed and the contracts for its construction were let in April, 1917.     The drain was divided into three sections for the purpose of selling.     Defendant McElheny secured the contract for the construction of section one.     His section was 4,080 rods in length, and the consideration for constructing the same was $39,372.     In addition to this McElheny secured the contract for doing certain bridge work in connection with his section of the drain, but this was taken care of by separate contracts.     McElheny commenced work on his contract in July, 1918, and continued to work

thereon intermittently until December, 1920, when he abandoned the contract, leaving a considerable portion of his section unfinished.    During that period he constructed another drain of less importance in the county of Cass, known as the Onen-McCoy drain, which discharged its waters into the Dowagiac river drain. This was also taken care of by separate contract.    Instead of orders being drawn and delivered to him as the work progressed and as the law provides, defendant Moon, who was the drain commissioner of Cass county, issued orders to him in the sum of $129,547.80. These orders have either all been paid or negotiated by him to other parties.

The defense made was that the work was begun just as the high prices came on and that the price of materials and labor increased so rapidly that his section could not be completed for the contract price; that when confronted by this situation they went to Dowagiac and consulted an attorney, who advised them that if the drain could not be completed for the contract price, the drain commissioners would have a right to increase the amount; that relying on this advice, defendant Moon kept issuing orders and delivering them to defendant McElheny until the maximum sum heretofore noted was reached.    It was their position, in short, that what they did might have been illegal, but that they acted in good faith, believing they had a right to do as they did, and that the additional money was expended in the construction of the drain.

1. The prosecutor was permitted to show upon the trial, against defendants' objection, that the Onen-McCoy drain fund had been overdrawn in the same way the Dowagiac river drain fund had been.    That while the contract price for the construction of the Onen-McCoy drain was $16,000, orders had been issued by Moon and delivered to McElheny in excess of $30,000.    Defendants objected seriously to this testi-

mony, arguing that the defendants were not on trial for a conspiracy to defraud the Onen-McCoy drain fund, and that the admission of such testimony was in violation of the rule of evidence, that other and similar crimes could not be shown as evidence of the one charged.

The testimony as to the Onen-McCoy drain was admitted for the purpose only of bearing on the relations of the defendants and the question of their good faith in overdrawing the contract on the Dowagiac river drain. This reason was explained fully by the court to the jury. We are of the opinion that no error was committed in admitting this testimony. These defendants were on trial for conspiracy to defraud the Dowagiac river drain fund. The Onen-McCoy drain was under construction during the time the Dowagiac river drain was being constructed and both defendants stood in the same relation as to both drains. A question of intent was involved in the case on trial and evidence of overdrawing the contract price in the Onen-McCoy drain would be helpful in characterizing similar acts in the Dowagiac river drain.

In *People* v. *Saunders*, 25 Mich. 119, two parties were on trial for conspiracy in attempting to induce a liquor firm to violate the internal revenue law so they could extort money from them in settlement thereof. A similar transaction by them with other parties was shown to characterize their act. Counsel argued the admission of this testimony was error. In answering that complaint this court said:

"It is next objected that the court erred in admitting evidence that, at the same time and place that complaint was made against Amberg & Helmer, complaint was made by the same party against another firm for a violation of the same law. These two complaints were so closely connected that in proving one it was almost impracticable to avoid the mention of the other. But even if it had been practicable, we

do not think it was essential.    If there was a conspiracy in the one case, there probably was in the other, and the evidence of the one would throw light upon the motives inducing the other.    Mr. Roscoe justly says that, 'The evidence in conspiracy is wider than, perhaps, in any other case.    *    *    *    Taken by themselves, the acts of a conspiracy are rarely of an unequivocally guilty character and they can only be properly estimated when connected with all the surrounding circumstances.'    Ros. Cr. Ev. 88 [14th Ed. p. 521] ; and see *Hunt's Case*, 3 B. & Ald. 573.    There are cases in which, a party being charged with fraud in a particular transaction, it was held competent to give evidence of similar fraudulent transactions with other persons.    *Bottomley* v. *United States*, 1 Story (U. S.), 135; *Rankin* v. *Blackwell*, 2 Johns. Cas. (N. Y.) 198; and these seem very much in point here. But we do not decide that the evidence of the other complaint would have been admissible, if it had been a distinct transaction at another time; it is enough that the two were so inseparably associated in time, and doubtless in motive also, that each may properly be said to have been intimately connected, with the *res gestæ* of the other, and therefore admissible in evidence with the other surrounding circumstances."

The rule is stated in Corpus Juris in accord with the foregoing.    12 C. J. p. 637; 16 C. J. p. 595.

We think the cases cited by counsel to the effect that evidence of other overt acts are not admissible to prove the charge in the information are not applicable to this situation.

2. In 1921 defendant Moon was before a committee of the board of supervisors for the purpose of explaining the irregularities in connection with the drain. During the conversation witness Kimmerly said to Moon:    "I do not want to do you an injustice, but you have been imposed upon by an unscrupulous rascal, and we want you to tell the truth."    The court, upon objection, refused to strike this out, but instructed the jury that it could be considered only as against defendant Moon.    The observation of Kimmerly was

part of the conversation which the witness was giving. The jury was entitled to the entire conversation. It was not very material, but we see no error in its admission.

3. William J. Barnard, a witness for the people, testified that he was well acquainted with defendant McElheny, and that he had a conversation with him while the drain in question was being constructed, and in discussing the cost of drains Mr. Barnard said to him:

"How do you manage to figure on drains and not have a loss on a big drain of that kind, not knowing these extra things that is liable to come up?"

To this McElheny replied that was easy enough, that they usually figured and got double the amount of the yardage that was dug.

"And I asked him how he did, that, and he said they tipped the engineer, and I asked him what they had to pay the engineer on these things, and he said it varied from 15 to 25 per cent. And I said: 'You can't pull any such thing as that here, can you?' And he said: 'Yes,' but he said that Goss was the hardest man he ever had to deal with; that he was not even willing to split fifty-fifty on the steal; that he required or wanted more than fifty per cent. of the steal."

It is argued that this testimony was immaterial for the reason that the case against Goss, the drain commissioner of Berrien county, had been dismissed by the court. It is perhaps true that the conversation was not important as to Goss, but it was against defendant McElheny. It clearly showed the state of his mind in dealing with the particular drain where questions of intent and corrupt motives were involved. It bore upon his good faith and the character of his acts. No error was committed in receiving it.

4. Error is alleged because the prosecutor said in his argument to the jury that:

"I believe from the evidence that these defendants are guilty."

We think counsel are in error in saying that this court has repeatedly held this language to be error. The court said, in *People* v. *Hess,* 85 Mich. 128, that it was not error for a prosecutor to state his belief of the guilt of the defendant based on the testimony in the case.     To the same effect, see, also, *People* v. *Welch,* 80 Mich. 616, and *People* v. *Ponsford,* 181 Mich. 659.

5. Complaint is made of the argument of the prosecutor.     Mr. Cady, one of the counsel for the defendants, in excepting to the argument made the previous day, said:

"I also wish to take exception to the following, that in connection with certain parts of evidence, Mr. Sterling stated to the jury that the defendant, pointing at Mr. McElheny, did not take the stand and deny certain statements made by other witnesses."

The prosecutor at once denied making such a statement.     Counsel then entered into a colloquy as to whether the argument was made and continued it until the court interfered.     The court did not indicate what his memory was with reference to the disputed point, but he did say to the jury, in connection with it and at the time, the following:

"Now, on the question of references by—claimed references by the prosecuting attorney to the fact that the respondents did not take the stand: The law is that in every criminal case it is the duty of the people to prove their case.     The burden is upon them.     The respondent does not have to prove his innocence, and no one charged with a crime is called upon to take the stand and testify in his own behalf, and the jury have no right to infer anything against a respondent because of his failure to take the stand and testify. And I charge you that if any argument was made by the prosecuting attorney in this case, which directly or indirectly, or by inference was calculated to attract

the attention of the jury to the fact that the respondents did not take the stand, the jury must wholly disregard any such argument, because, as I have said to you, you can draw no inference whatever from the fact that these respondents, or any of them, failed to take the stand and testify in their own behalf."

We have no way of determining whether the objectionable argument was made or not, as the argument of the prosecutor was not taken by the stenographer, and as the record does not show the basis for the objection we cannot consider it.

6. Several errors are alleged on the charge of the court. . We have gone over the charge carefully in connection with the alleged errors and are of the opinion that they are not well taken. The questions involved were clearly stated to the jury and the principal defense of their good faith and their reliance upon the legal opinion they had secured from an attorney was presented to the jury fully as favorable to defendants as the law would permit. If any error were made in this respect it was not one that the defendants could complain of. We are of the opinion that the defendants had a fair trial.

The judgment of conviction will be affirmed. As the case is here on exceptions before sentence, the trial court will proceed to sentence the defendants.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.