## UNITED STATES v. GOODMAN.
### No. 6903.

Circuit Court of Appeals, Seventh Circuit.
Feb. 15, 1940.

---

2 33 U.S.C.A. § 851.

Burrel Barash and Louis Gard, both of Galesburg, Ill., and Harold M. Keele, of Chicago, Ill., for appellant.

Howard L. Doyle, U. S. Atty., and Marks Alexander and George R. Kennedy, Asst. U. S. Attys., all of Springfield, Ill., for appellee.

Before EVANS, TREANOR and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

Defendant was prosecuted upon an indictment consisting of four counts charging the defendant with aiding and abetting a bank cashier in the misapplication of funds of a bank which was insured under the Federal Deposit Insurance Act.[1] The

---

[1] 12 U.S.C.A. § 592.

defendant was found guilty on two counts and judgment of sentence and commitment was entered thereon. From such judgment defendant prosecutes this appeal.

The defendant urges the following three grounds for reversal of the judgment of the District Court: (1) The indictment is insufficient in law to sustain the conviction. (2) The evidence of the defendant's method of establishing a false and fictitious credit on the books of the insured bank was inadmissible under the indictment. (3) Certain remarks of the United States Attorney were such as to deprive the defendant of a fair and impartial trial.

▆ It is defendant's contention that the language of the indictment does not sufficiently describe "an unlawful and wilful misapplication" of the "moneys, funds and credits" of the insured bank. The particular transactions which, under the allegations of the indictment, effectuated the misapplication of moneys, funds and credits of the bank consisted of the cashing of checks drawn by Irving's Tractor Lug Company payable to Elmwood Auto Wrecking Company, when the amount of the checks was "in excess of all sums of money which said Irving's Tractor Lug Company was then entitled to draw out of the moneys, funds and credits of said 'The Bank', that is to say, (when) the said Irving's Tractor Lug Company was * * * entitled to draw out of the moneys, funds and credits of said 'The Bank' no money whatsoever." It was further alleged that as a result of the foregoing transactions the cashier, Claude E. Frankenburger, "was enabled to and did convert to the use, benefit and advantage of said Irving's Tractor Lug Company, Elmwood Auto Wrecking Company and Irving Goodman" the amount of the different checks. It was also alleged that the cashier knew that the sum of the different checks was "in excess of all sums of money which said Irving's Tractor Lug Company was then entitled to draw out of said moneys, funds and credits of said 'The Bank;'" and it was further alleged that the amount "of said moneys, funds and credits of said 'The Bank' was lost" to the bank.

Defendant's argument centers entirely around the use of the word "entitled" and the gist of his argument is that the words "entitled to" are ambiguous and do not sufficiently describe "an unlawful and wilful misapplication." For the purpose of developing his argument defendant suggests different situations under which Irving's Tractor Lug Company would not have been "entitled to draw" funds from the bank, and yet, an actual withdrawal under such situations would not constitute a wilful misapplication within the meaning of the statute defining the crime charged. Defendant cites and relies upon United States v. Britton [2] for the proposition that "where an indictment employs language which can be held to embrace both a legal and an illegal act, it must be held that it has not charged an offense." The discussion of the Supreme Court, which is of pertinency to the present question, was directed to certain counts of an indictment which charged that the defendant wilfully misapplied moneys of a banking association "with intent to injure and defraud the association and certain persons to the grand jurors unknown," by using funds of the association to purchase shares of its capital stock; the counts in question containing the further allegation that the stock, so purchased, was held by the defendant in trust for the use of the association. The Supreme Court stated that the wilful misapplication which was made an offense by the statute in question meant a "misapplication for the use or benefit of the party charged, or of some person or company, other than the association;" and that to constitute the offense of wilful misapplication there had to be a conversion of the association's funds by the defendant to his own use or to the use of someone else; and the court pointed out that the foregoing essential element of the offense not only was not averred in the counts but was negatived by the averment that the shares purchased by the defendant were held by him in trust for the use of the association. The court concluded that since there was no averment of a conversion "by the defendant to his own use or the use of any other person of the funds used in the purchase of the shares" the counts charged "mal-administration of the affairs of the bank, rather than criminal misapplication of its funds." It appears to be a necessary inference from the Supreme Court's discussion that the counts would have been held good if they had contained an allegation that the wilful misapplication had been made for the use of the defendant or some other person.

---

[2] 107 U.S. 655, 2 S.Ct. 512, 521, 27 L.Ed. 520.

The counts of the indictment before us allege a wilful misapplication "for the use, benefit and advantage of Irving's Tractor Lug Company, a corporation, Elmwood Auto Wrecking Co., a corporation, and one Irving Goodman," defendant-appellant, who is charged with aiding and abetting the wilful misapplication by the cashier of the bank.

The Supreme Court stated in the opinion in the Britton case that the words "wilfully misapplied" do not "of themselves fully and clearly set forth every element of the offense charged." That would be true of the use of the words in the instant case. But the Supreme Court further stated, in clarifying its thought, that "it would not be sufficient simply to aver that the defendant 'wilfully misapplied' the funds of the association;" that "there must be averments to show how the application was made and that it was an unlawful one." In the instant case, however, the allegations of the complaint clearly show "how the application was made and that it was an unlawful one."

The elements of the offense are adequately defined by the allegations in each count that the cashier of the bank unlawfully, wilfully, etc., and with intent to injure and defraud the bank, wilfully misapplied the moneys, funds and credits of the bank by payment of the check drawn upon the bank by the Irving's Tractor Lug Company when the amount paid out was in excess of all sums of money which the drawer was then entitled to draw, and when the drawer was entitled to draw out of the moneys, funds and credits of the bank no money whatsoever, with the result that the cashier "was enabled to and did convert" the amount of each check "to the use, benefit and advantage" of the drawer and payee of the check and of defendant-appellant.[3]

In Cochran & Sayre v. United States[4] the Supreme Court stated that the true test of the sufficiency of an indictment is "not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

We are satisfied that the allegations of the counts of the indictment before us fully satisfy the foregoing test and we hold that the trial court committed no error in overruling defendant's motion to quash.

In support of his second ground for reversal defendant relies upon the proposition that "where the evidence shows that there was sufficient credit on the books of a bank to cover outstanding checks, evidence tending to impeach that credit is inadmissible when the indictment does not allege that the credit was fictitious and falsely and fraudulently procured."

The indictment contains no allegation that there was or was not a book credit in favor of the drawer of the checks when the cashier of the bank paid the amount of the checks out of the money, funds and credits of the bank. Obviously, it would have been a prima facie defense for defendant to have shown that the drawer of the checks had credit on the books of the bank in an amount sufficient to have taken care of the checks at the time that the cashier paid them. The burden was upon the government to destroy the probative value of the book credit by evidence that the drawer of the checks in fact had no credit against the drawee bank, but it was not necessary to allege the existence of this prima facie defense in order to lay the basis for introduction of evidence for the purpose of overcoming it. In order to make out its case against defendant it was necessary for the government to prove that the cashier knew that the drawer of the check, at the time of its payment, was then entitled "to draw out of the moneys, funds and credits of said 'The Bank' no money whatsoever." When the government as a part of its case in chief introduced exhibits 17-AH and 17-AJ, which were ledger accounts of Irving's Tractor Lug Company and which constituted a daily statement of the company's account, these ledgers showed a daily balance over the amount of the checks in question. In other words, the ledger sheets considered alone indicated a state of account with the bank which negatived the allegation that

3 Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481.

4 157 U.S. 286, 15 S.Ct. 628, 630, 39 L.Ed. 704.

the payment of the checks constituted an application of the funds of the bank to the use of the defendant and others; in fact the ledger sheets indicated that the payment of the checks constituted an application of the bank credit of the Irving's Tractor Lug Company for the use and benefit of the company. But actually the appearance of adequate credit with the bank was obtained by the deposit of worthless checks which the Tractor Lug Company had drawn in favor of Goodman's other corporation. These worthless checks were drawn in accordance with a "check kiting" arrangement between defendant Goodman and the cashier of the insured bank. The evidence, to which defendant raises objection, was offered for the purpose of showing the true state of account between the drawer of the checks and the bank, and to support the allegation that the drawer of the check was "entitled to draw out of the moneys, funds or credits of said 'The Bank' no money whatsoever." Also the evidence was material to the question of criminal intent on the part of the cashier and defendant Goodman. We are of the opinion that it was admissible for both purposes.

■ In support of his contention that he was deprived of a fair trial by reason of certain inflammatory statements of government counsel the defendant includes in his brief excerpts from counsel's argument. In the first excerpt the government counsel referred to the fact that the defendant was in the business of wrecking automobiles and tractors; and added that the jury could draw its own conclusions from the record that the defendant's side-line was to wreck banks and that "he did a pretty good job of it." Defendant counsel objected to the remark and asked that it be stricken from the record as unduly prejudicial. In response to the objection the court replied: "I am sorry; I didn't hear what was said; I was working on the instructions. But the jury are the judges of the facts." Defendant did not ask that the remarks be read to the court or offer to inform the court as to just what had been said. The court must have understood that the defendant was satisfied with the court's statement that the jury was the judge of the facts.

■ At another point in his argument government's counsel referred to the defendant as "a wolf from Wall Street" and defendant's counsel objected "to that argument" and requested that "it be stricken." The court ordered that part of the record be stricken "as to personal references to the defendant only." Defendant's counsel made no objection to the limitation and was apparently satisfied with the action of the court. The defendant's motion to strike did not designate any particular portion of the statement of government counsel.

■ Counsel for the government referred to the closing of the insured bank and also of another bank known as the Altona bank. Defendant objected solely on the ground that the record did not support the statement as to the Altona bank. There was evidence, however, that the Altona bank was being liquidated. The court instructed the jury that if a statement was made with regard to the evidence it was for them to determine the correctness of the statement. Also the court instructed the jury that the closing of the insured bank was no evidence of guilt or innocence of defendant and was not to be considered as such; and that the fact that it was closed was not in and of itself any evidence of the guilt of the defendant.

■ In addition to the foregoing defendant sets out certain other statements of government counsel to which no objection was made. We must assume that defendant's counsel did not consider the remarks prejudicial at the time they were made. At any rate counsel owed a duty to the trial court to call attention to the language of government counsel to enable the trial court to take measures to prevent any injury to the defendant and thus avoid the necessity of declaring a mistrial.

■ It is peculiarly within the knowledge of the trial judge whether remarks of counsel during the trial tend to prejudice the cause of a party. The courtroom atmosphere, prior remarks which have provoked the questioned statements, and other factors which cannot be appraised by a reviewing court may render remarks of counsel innocuous, although they may appear viciously prejudicial when removed from their setting. It is apparent that some of the statements objected to by defendant were in answer to remarks of counsel for defendant. We do not have a report of the remarks of defendant's counsel. But presumably the trial court heard the remarks

of defendant's counsel and was in a position to appraise the effect of government counsel's remarks in the light of the remarks to which they were directed. Furthermore, the trial judge is justified in assuming that the jurors possess sufficient common sense and discrimination to enable them to evaluate conduct and remarks of counsel even if the conduct and remarks should offend ordinary standards of propriety. It is only fair to jurors to assume that they do not always take counsel as seriously as counsel, in the heat of argument, take themselves.

Ordinarily the trial court's instructions avert any possibility of injury to a party's cause from improper remarks of counsel. And in the exceptional case reviewing courts must rely largely on the trial court's judgment respecting the need of special action to avert injury. We are unable to say that any one, or all, of the questioned statements deprived the defendant of a fair trial by reason of their prejudicial effect upon the jury.

The judgment of the District Court is affirmed.