**J. Stacey HENDERSON, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 12113.

United States Court of Appeals,
Sixth Circuit.

Jan. 11, 1955.

C. P. J. Mooney, Memphis, Tenn., Eugene P. Boyd, Memphis, Tenn., on the brief, for appellant.

Robert E. Joyner, Memphis, Tenn., Millsaps Fitzhugh, Edward N. Vaden, Memphis, Tenn., Warren Olney, III, Washington, D. C., on the brief, for appellee.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

In a previous trial, appellant was found guilty by a jury under an indictment charging violation of the Mail Fraud Statute, § 1341, Title 18, U.S. Code. On appeal the judgment was reversed because of the admission of evidence which the Court considered incompetent and prejudicial. Henderson v. United States, 6 Cir., 202 F.2d 400, rehearing denied 6 Cir., 204 F.2d 126. On the retrial, in which the evidence held incompetent was not offered, appellant was again found guilty by a jury and received a sentence of five years imprisonment and a $1,000 fine, from which judgment this appeal was taken.

The facts are fully stated in the opinion on the first appeal. In brief, the Government charged appellant with a scheme to defraud of the following nature: Between June 9, 1948 and September 6, 1950, appellant, with some unfavorable experience in the business and without funds, came to Memphis, Tennessee, for the purpose of promoting the drilling of exploratory wells for oil and gas on two adjoining oil and gas leases in Caddo Parish, Louisiana, comprising 33.45 acres and 5.13 acres respectively. These tracts were part of a larger tract of 245 acres, upon which the Gulf Refining Company had drilled numerous wells beginning about 1908. These wells were pumped out and thereafter abandoned by 1914. The larger tract, for which appellant paid approximately $500.00, was divided into fractional undivided interests of 1/32nd each, which were sold to the public in the Memphis, Tennessee area at a $1,000 per unit. Two wells were drilled on this tract. Oil was struck in the second drilling but quickly decreased in volume, yielding approximately 100 barrels of commercial oil, following which operations on the tract were abandoned. The smaller tract, for which no consideration was paid by appellant, was divided into fractional undivided interests of 1/64th each, which were sold to the public in the Memphis, Tennessee area at a $1,000 per unit. The drilling on the second tract produced a dry hole, following which Henderson left Memphis. The indictment charged false representations by appellant in making the sales, and specifically alleged the mailing of a $500 check to appellant by Keller, a purchaser of a fractional interest in the second tract.

Appellant contends on this appeal, as he did on the first appeal, that the evidence was insufficient to take the case to the jury and that the trial judge erred in overruling his motions for a judgment of acquittal. On the former appeal, we were of the opinion that the evidence therein reviewed sustained the action of the trial judge and supported the verdict. That ruling constitutes the law of the case. Although an Appellate Court, upon a second review, has the abstract power to reach a result inconsistent with its decision upon the first review of the same case, it is a power to be exercised very sparingly, and only under extraordinary conditions. General American Life Ins. Co. v. Anderson, 6 Cir., 156 F.2d 615, 618–619. On a question such as is involved in this phase of the case, we adhere to our previous ruling unless there is a material difference in the evidence offered by the Government in the two trials.

All of the witnesses who testified for the Government in the first trial testified again in the second trial, with the exception of two. One of those who did not

testify on the second trial was a co-defendant, Rout, who testified in the first trial about certain statements which appellant made to him which bore on the issue of fraudulent intent. Our previous opinion referred to that testimony as part of the evidence justifying the submission of the case to the jury. Appellant claims its absence in the second trial is sufficient to change the ruling. Page v. Arkansas Natural Gas Corporation, 8 Cir., 53 F.2d 27, 31, affirmed 286 U.S. 269, 52 S.Ct. 507, 76 L.Ed. 1096. We do not agree. The present record again includes evidence of not only misrepresentations of material facts, referred to in the first opinion, but also representations as to value and soundness of the leases being explored that "go so far beyond the proper limits of the enthusiasm of the normal salesman, or the mistaken judgment of the honest man, as to impress them with the badge or mark of fraud." Henderson v. United States, supra, 202 F.2d at page 404. Also to be noted, not previously referred to, is the testimony of Tell T. White, expert witness for the Government, to the effect that the history of the prior drillings and the abandonment of the leases, furnished no basis for any reasonable expectation on the part of appellant of bringing oil in on the leases in commercial quantities.

■ Appellant complains of the change in testimony on the part of some of the Government witnesses since the first trial. In the main, the changes made a stronger case against the appellant. The inconsistencies, if such they were, were fully developed by appellant on cross-examination, and presented a question of credibility for the jury. Butzman v. United States, 6 Cir., 205 F. 2d 343, 349, certiorari denied 346 U.S. 828, 74 S.Ct. 50.

■ Appellant contends that the District Judge erred in permitting Mrs. Everlina B. Davis, one of the purchasers, to testify without personally determining her mental competency. Counsel stated to the Court that he had been advised that she had been taking shock treatments at a sanitarium for a mental disorder. Following some discussion of the matter between the Court and counsel, which disclosed that counsel had no personal knowledge in the matter, the Court requested the Assistant District Attorney to talk to her outside of the court room. He did so and reported that about a year or so before, she was involved in a bad automobile accident and they had given her shock treatments because of her worry about her son, who received a bad head injury in the accident, but that she was in full possession of her faculties. Although appellant's counsel requested the Court to make a personal examination of Mrs. Davis's mental competency, which was not done, and to which action he excepted, he offered no evidence or indicated he had any to offer, that would tend to discredit this report to the Court. He was offered the opportunity of talking to the witness himself, but did not do so. Upon becoming a witness, Mrs. Davis testified that she was a graduate of the University of Tennessee, was employed by the Mid-South Plumbing and Heating Company in Memphis in doing estimating work, for which firm she had worked for more than nine years, and that she had returned to work immediately after the accident in order to keep busy. Her testimony, both on direct and cross examination, was responsive and clear, and on this review gives no indication of mental incompetency.

The question of the competency of a witness is for the Court, not the jury. If the competency of a witness is challenged before testifying, it is the duty of the Court to make such examination as will satisfy it of the competency or incompetency of the witness. The form of the examination rests in the discretion of the Court. It is the better practice for the trial judge to either question the witness himself or to be present when the examination is conducted by counsel, and to rule on the basis of the evidence so heard. However, when a mature person of normal appearance and demeanor is offered as a witness, he is presumed to be a competent witness and incompetency must be shown by the par-

ty objecting to him. Stephan v. United States, 6 Cir., 133 F.2d 87, 95, certiorari denied 318 U.S. 781, 63 S.Ct. 858, 87 L. Ed. 1148, rehearing denied 319 U.S. 783, 63 S.Ct. 1172, 87 L.Ed. 1727. Whether, on the facts developed, the witness is found by the Court competent or incompetent to testify, is the exercise of sound judicial discretion, which finding will be accepted on review in the absence of its abuse. Stephan v. United States, supra; United States v. Tannuzzo, 2 Cir., 174 F. 2d 177, 181. Under the circumstances in this case, we find no prejudicial error in receiving the testimony of Mrs. Davis.

 Appellant complains of the refusal of the District Judge to give numerous requested instructions to the jury. It is unnecessary to set them out in detail here. In general they dealt with the necessity of the Government proving that the appellant made the *particular* representations and promises described in the indictment, with knowledge of their falsity and with the intent to deceive regardless of other facts proven in the case; that unless these particular facts were proven beyond a reasonable doubt, the appellant should be acquitted, even though the Government proved that more than the stated number of units were sold in the first tract, and even though the jury did not approve of the character of the contract between the appellant and the purchaser; that the jury could disregard the testimony of biased witnesses, of witnesses who wilfully gave testimony materially different from that given on the former trial, of witnesses who wilfully testified falsely in a material matter, or of witnesses whom they found to be impeached; that proof of contradictory statements by a witness on a material point may be sufficient to raise a reasonable doubt; and that the appellant was guilty of no fraud in retaining any surplus proceeds for his own use after performing what his contract obligated him to do.

The trial judge is not required to instruct the jury in the exact language requested by one of the parties. It is part of the judicial office to decide upon the style and form in which to explain the applicable law to the jury. If the substance of the requested instruction is involved in the case and is correctly explained to the jury, it is not necessary to express it in the categorial form which counsel has selected. Southern Pacific Co. v. Guthrie, 9 Cir., 180 F.2d 295, 301; Runde v. Manufacturers Casualty Ins. Co., 2 Cir., 178 F.2d 130, 133; S. S. Kresge Co. v. Holland, 6 Cir., 158 F.2d 495, 499. The District Judge explained to the jury in detail "the scheme to defraud relied upon by the Government." In other places in the charge he referred to the fact that the appellant was on trial "for the one offense only as charged in the first count of the indictment," that it was necessary for the Government to prove beyond a reasonable doubt "that he knowingly made the false statements, representations and promises charged in the indictment," and that it was for the jury to determine whether the Government had met the burden of proving "the guilt of the defendant Henderson beyond a reasonable doubt of the offense for which he is on trial." He explained at some length the problem presented when there were conflicts in the statements of witnesses, the tests to be used in adjudging the credibility of a witness, the methods of impeaching or discrediting a witness, and instructed the jury specifically that it was a question of fact for the jury to determine how far the testimony of any witness had been impaired by the invalidating processes previously described. He specifically told the jury "the issues of fraud in this case are not to be determined by the fact that the defendant may or may not have made a profit in these transactions, or that those buying units lost their money." In this trial, as in the first trial, appellant's theory of the transactions and his defense to the indictment were fully presented to the jury by the charge of the District Court. We briefly discussed and approved in our former opinion the completeness and fairness of those instructions. Henderson v. United States, supra, 202 F.2d 400,

404. There was no material difference in the instructions given in the second trial. We are of the opinion that the instructions given adequately covered the points raised by the numerous special requests made by the appellant, and fairly presented the case to the jury. Louisville & Nashville R. Co. v. Tucker, 6 Cir., 211 F.2d 325, 334.

Appellant also complains of misconduct of the Government attorneys in their closing arguments to the jury, the more important instances being an appeal to the patriotism of the jury to protect the public, references to the purchasers as poor people and "suckers," statements of personal belief and the appellant's guilt, and incorrect statements of facts not justified by the evidence.

■ Unless calculated to inflame the minds of the jurors, an appeal to the civic responsibilities of jurors as law-abiding citizens is not misconduct. Remus v. United States, 6 Cir., 291 F. 501, 511–512; Tuckerman v. United States, 6 Cir., 291 F. 958, 969; Stassi v. United States, 8 Cir., 50 F.2d 526, 532; People v. Mizzano, 360 Ill. 446, 196 N.E. 439.

■ It is of course permissible for the district attorney to ask the jury for a conviction. Nichamin v. United States, 6 Cir., 263 F. 880, 882. In doing so the district attorney has the right to summarize the evidence and urge upon the jury all reasonable inferences and deductions from the evidence. It is not misconduct on his part to *express* his individual belief in the guilt of the accused if such belief is based solely on the evidence introduced and the jury is not led to believe that there is other evidence, known to the prosecutor but not introduced, justifying that belief. United States v. Battiato, 7 Cir., 204 F. 2d 717, 719; Gridley v. United States, 6 Cir., 44 F.2d 716, 739, certiorari denied 283 U.S. 827, 51 S.Ct. 351, 75 L.Ed. 1441; United States v. Klein, 7 Cir., 187 F.2d 873, 876–877; United States v. Holt, 7 Cir., 108 F.2d 365, certiorari denied 309 U.S. 672, 60 S.Ct. 616, 84 L. Ed. 1018, rehearing denied 309 U.S. 698,

60 S.Ct. 806, 84 L.Ed. 1037. Examples of the application of the rule can be found in the following cases: People v. Caylor, 386 Ill. 501, 54 N.E.2d 514; People v. Mizzano, supra, 360 Ill. 446, 196 N.E. 439; West v. State, 134 Tex. Cr.R. 565, 116 S.W.2d 726; Tomlinson v. State, 137 Tex.Cr.R. 600, 132 S.W. 2d 413; Shank v. State, 189 Ark. 243, 72 S.W.2d 519; Commonwealth v. Meyers, 290 Pa. 573, 139 A. 374; People v. Pratchner, 9 Cal.App.2d 451, 50 P.2d 75; People v. McElheny, 221 Mich. 50, 56, 190 N.W. 713. In our opinion the present case falls within the scope of the rule.

■ Where the nature of the offense charged reasonably includes a consideration of the economic status of the injured persons, as in a scheme to defraud, a defendant has no just cause to complain if their status is disclosed and commented upon in presenting the case to the jury. Norman v. United States, 6 Cir., 100 F.2d 905, 907. In any event, the District Judge instructed the jury to disregard any references to the economic status of the purchasers, as it was not a question to be considered in the case.

■ This case, both in the first trial and in the second one, was a hotly contested one. The present trial took approximately eight days time. Counsel for the respective parties engaged in lengthy and vigorous argument to the jury. Differences of opinion and clashes between opposing attorneys were inevitable. A vigorous prosecutor in the heat of argument may at times use intemperate language, sometimes provoked by tactics or argument of opposing counsel. It is of course subject to control by the trial judge, with or without objection being made by the complaining party. United States v. Goodman, 7 Cir., 110 F.2d 390, 395. But it must be remembered that in the closing argument to a jury, the government attorney is an advocate, as is counsel for defense, and proper oratorical emphasis is denied to neither. Di Carlo v. United States, 2 Cir., 6 F.2d 364, 368; Remus v. United

States, supra, 291 F. at page 511. We do not consider the remarks complained of in the present case as depriving the appellant of the fair trial to which he was entitled. Kowalchuk v. United States, 6 Cir., 176 F.2d 873, 877; Sharp v. United States, 6 Cir., 195 F.2d 997, 999; United States v. Goodman, supra.

The judgment is affirmed.

McALLISTER, Circuit Judge (dissenting).

In the able and comprehensive opinion of Judge Miller, I concur in all that is said with respect to the admission of evidence, its sufficiency to sustain the verdict, the correctness of the district court's instructions to the jury, the law of the case, and the conduct of the trial court and of the district attorney—with one exception. I am of the view that the argument of the district attorney, and the manner in which it was presented, wherein he expressed his individual belief in the guilt of the accused, and the intimation that the jury was under its oath and duty to convict the appellant, constituted reversible error. It is with reluctance that I come to this view, inasmuch as the case has already been tried on two different occasions, each time for several days before a jury, and it is here before us at the present time on a second appeal. However, the protection of the just rights of persons accused of crime by the government, which in this case I consider to have been clearly violated, brings me to this position.

In the long history of our law, we have continued to add to the protection of persons accused of crime, with firm ramparts of constitutional safeguards, and procedures to insure a fair trial. Although armed with the presumption of innocence, even an innocent person bears a heavy burden when charged with crime by the indictment of a grand jury, notwithstanding the fact that such an indictment is no more than an accusation based on hearing one side of the case; and to be tried by the government on a criminal charge subjects even an innocent person to great emotional strain and anxiety and physical stress. For, while the government, in proceedings against an individual in a court of justice, is only another party, nevertheless, the respect which the people have for the government in its capacity as the representative of their liberties gives it a prestige that is bound to carry over into the courtroom itself. Because of these considerations, courts are particular and zealous to insist upon a strict observance of the rights of the accused to a fair trial.

With regard to this case, it is to be said that the respect of the people for our Constitution and law extends, especially in the federal courts, to respect for the judge and for the district attorney. The district attorney, in the minds of the members of a jury in a federal court, stands as an officer who is engaged in the performance of the highest duties in the administration of justice; and members of juries regard him as—in fact he is—one of the most important and respected officials of law and government. For this reason, the expression of his personal opinion, in an argument before a jury, carries a weight far beyond such an expression by one who does not hold his high office; and it is not difficult to conclude that, during a forceful argument in a criminal case, the expression of his personal opinion that an accused person is guilty may well tip the scales in cases where, otherwise, the jury might conclude there was a reasonable doubt of guilt.

A district attorney, in his argument to the jury, has the right to draw all legitimate inferences from the evidence and to assert a belief, based on the evidence, that the accused is guilty. Nevertheless, it is error for him to indulge in remarks indicating his personal opinion that the accused is guilty; and such remarks in most cases are considered so flagrant as to require a reversal of the conviction.

In the case before us, the assistant district attorney, in his closing argument, after referring to the evidence of the

frauds claimed to have been perpetrated by appellant, went on to declare:

"These things happen all the time. You read about it, and you like to stand around corners and say, 'Why doesn't the Government do something about all this stuff?' I have heard you. 'They ought to do something about it. They ought to get these people doing this stuff.' I have heard you. 'They'—you are 'they'—

"Mr. Mooney (counsel for defendant): If the Court please, I object to that, it is arguing inflammatory—

"Mr. Vaden: Excuse me.

"Mr. Mooney: It is, as I said a moment ago, an appeal to prejudice, and nothing else.

"The Court: What was?

"Mr. Mooney: It is just an inflammatory appeal to prejudice, and nothing else—about what people say on corners—nothing else. * * *

"The Court: Well, leave that out, Mr. Vaden. * * *

"Mr. Vaden: I will take that back, the word 'they.' I will take that back, Your Honor. But this is the Government. This is the Government. You are the Government. You are the people that have got to decide this thing. There are just twelve people. They are you. His Honor can't decide it. I can't decide it. * * * This Grand Jury indicted this man, and when they indict him, we are going to prosecute him. And that is what I am paid for, what I am going to do. I took an oath. You took an oath. I am doing my duty. I am doing it. I am going to do it. It may not be big—but I am going to do it—hot or cold—if I believe a man guilty. And if I don't believe he is guilty, no one is going to make me stand here and prosecute him—not going to do it. But if I believe he is, I am going to put witnesses on here. * * "

A little later, the associate of the government attorney, in his argument, declared:

"And now it is dumped in your laps—see. We have about finished. Your own conscience—your own conscience. If your mind cannot rest easily on a verdict—if there is a reasonable doubt—answer me this —can your mind rest easily on a not guilty verdict?

"Mr. Mooney: If the Court please, I think he ought to stop right there. I object to that. * * * He asked the alternate question, in substance—'Can your mind rest easily on a not guilty verdict—they should not be allowed to bring the Court a not guilty verdict.'

"The Court: Are you objecting?

"Mr. Mooney: I certainly am, sir.

"The Court: Objection overruled."

In State v. Thayer, 124 Ohio St. 1, 176 N.E. 656, 657, 75 A.L.R. 48, a special prosecutor stated to the jury that he would not be in the case unless he was convinced of the guilt of the accused. Upon objection by counsel for the accused and request for a mistrial, the prosecutor said, in the presence of the jury, "We feel that it is entirely just in the light of the evidence." The Supreme Court of Ohio held that, even though the record disclosed no other error, the overruling of the objection and motion by the trial court constituted prejudicial reversible error.

In State v. Gunderson, 26 N.D. 294, 144 N.W. 659, 660, in a criminal case, counsel for the state, in his closing argument, said: "I do not come here to try a case unless the defendant is guilty". The court immediately intervened and told the jury: "The court now admonishes the state's attorney that the remark is improper, and suggests that he in no manner refers to his opinions in his further address to the jury." In reversing the conviction, the Supreme Court said: "No one who is at all conversant with jury trials can fail

to see the possible prejudice of this remark. The scales were hanging in the balance. * * * In such a juncture the state's attorney himself testifies, and seeks to force into the issue his own personality and his own standing and influence. He practically tells the jury that the defendant is guilty, when he knows that he cannot be cross-examined as to his statement. It is universally held that such remarks are not merely a breach of professional propriety and professional ethics, but constitute legal error."

In the instant case, the district attorney admonished the jury that both he and the jury had taken an oath to do their duty; that he was doing his duty and was prosecuting the accused because he believed him guilty, although no one could make him undertake the prosecution unless he did believe him guilty. The foregoing should be considered together with the statement to the jury—almost an accusation—that the district attorney had heard members of the jury standing around corners asking why the government did not do something about these things, and also saying that the government ought to get the people who did such things; that neither he, as district attorney, nor the district judge could do anything about it; that the jury had taken an oath to do its duty; and then the question was asked of the members of the jury, whether their minds could rest easily on a not guilty verdict. The impression which these statements and arguments made on the jury seems self-evident—that the jury, as citizens, had been complaining why the government did not get malefactors such as appellant; that the district attorney now had appellant before them in court and believed him guilty inasmuch as no one could make him prosecute unless he believed the man guilty; that the jury itself was the government over whose remissness, in the past, they had complained; that while the district attorney could not do anything about the decision, he had taken an oath to do his duty and was doing his duty because of his belief of the guilt of appellant, and he strongly intimated that since the jury had taken an oath also to do its duty, their minds could not rest easily on a non-guilty verdict. To bring in a verdict of guilty on the ground that the minds of the members of the jury could not rest easily on a not guilty verdict would be a failure on the part of a jury to perform its duty. The criterion is not whether the minds of the members of the jury could rest easily on a verdict of not guilty. In fact, in a criminal case, the members of the jury could well perform their duty in returning a verdict of not guilty and their minds might still be very uneasy in cases where they had the strongest suspicion of the guilt of defendant, and yet could not say that he was guilty beyond a reasonable doubt. Under these circumstances, the district attorney's personal belief, as expressed to the jury, that appellant was guilty constituted prejudicial error.

A prosecuting attorney in a criminal case is not bound to make his argument to the jury colorless or argue both sides of the case, if defendant is represented by counsel; and he may present forceably the government's side of the case. He is not, however, justified in thrusting his personality into the case and expressing his opinion that the defendant is guilty, or stating as a fact anything except what the evidence tends to prove or which he expects in good faith to prove. If he violates this rule, he is guilty of misconduct; and, in the instant case, we are of the opinion that the conduct of the district attorney was prejudicial to the substantial rights of the accused. See State v. Clark, 114 Minn. 342, 131 N.W. 369.

The government cites several cases in support of the contention that it is not necessarily misconduct for the district attorney to express his individual belief in the guilt of the accused, if such belief is based solely on the evidence introduced, and the jury is not led to believe that there is other evidence known to the prosecutor but not introduced, justi-

fying that belief. We shall briefly discuss the pertinent cases relied upon by the government.

In Gridley v. United States, 6 Cir., 44 F.2d 716, defendant's attorney, in his argument to the jury, had stated that the district attorney was seeking an unjust conviction, merely because of his ambition to win the case. The district attorney, in response, declared to the jury that he believed the accused was guilty. To this statement, counsel for defendant objected, and was overruled. The trial court, however, in its instructions to the jury, stated that it was to pay no attention to this statement, but that since defense counsel had charged the district attorney with an improper motive, he was fully justified in defending himself against "those very unjust, improper charges * * * and was abundantly justified in denying the unjust accusations made against him * * *, but I do say to the jury that they are not concerned with the opinion of counsel as to what he thinks about the guilt or innocence, and they will ignore that and pay no attention whatever to it, and he was driven into that statement by the unfair accusations made against him." The foregoing case is obviously distinguishable from the case at bar.

In United States v. Klein, 7 Cir., 187 F.2d 873, 877, complaint was made by the accused of statements of the district attorney during argument in which, in discussing the evidence, he said "I know—" with respect to certain evidence thereafter set forth. In these instances, when the expression, "I know," was used, it was followed by the outline of the evidence on which this statement was based. As the court stated: "For example, when it was said: 'I know you can drive from Chicago from 12 o'clock noon to four o'clock in the afternoon,' it was added immediately 'because we had a man on the stand who did it.' And again, when he said: 'I know Estelle Klein is a liar' he added: 'because other people whose veracity can't be doubted have told us from the witness stand that Eddie Klein wasn't in Chicago watching a television set that night but was down here with a gun in his hand, etc.'" This is plainly distinguishable from the instant case.

United States v. Battiato, 7 Cir., 204 F.2d 717, 719, is a case nearest to supporting the government's position in this regard, but that case, too, is distinguishable from the instant case. There, counsel for the accused, in his argument to the jury, had referred to the building which houses the Department of Justice in Washington, and stressed the motto inscribed on that building: "The Government wins when justice is done." Immediately after this statement by appellant's counsel, the district attorney began his argument and said: "I for one subscribe to the motto that the Government wins when justice is done. * * * If I, in my own mind, thought for one minute that these defendants were not parties to this case, I certainly would not have the courage to stand up here and argue before you that they were guilty. It is never our intention to prosecute and try innocent men." In so saying, it seems to me that the district attorney was replying to the defense argument and telling the jury that in his opinion the government would not win if it received a verdict that was unjust to the accused, but that in his opinion, because the accused was guilty, such a verdict would not be unjust. Unless the statement was palliated by the context—which I am not sure it was—I would consider it to be prejudicial.

The court of appeals, in the foregoing case, held that when the context of the statement of the district attorney was taken into consideration, it became clear that no improper argument was presented. There is no context in the instant case that, in like manner, could be said to justify the statements of belief in appellant's guilt by counsel for the government.

In view of the foregoing, I am of the opinion that the judgment of conviction should be reversed.